UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA PURSUANT TO 18 U.S.C. § 3512 FOR ORDER FOR COMMISSIONER'S APPOINTMENT FOR ENVIRONMENTAL CRIMES INVESTIGATION | ML No: 23-1075 |

Reference: *DOJ Ref. # CRM-182-78214*

APPLICATION OF THE UNITED STATES FOR AN ORDER
FOR A COMMISSIONER'S APPOINTMENT PURSUANT TO 18 U.S.C. § 3512

The United States of America, moving by and through its undersigned counsel, respectfully submits this *ex parte* application for an Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Angela S. George, Trial Attorney, Office of International Affairs, Criminal Division, U.S. Department of Justice (or a substitute or successor subsequently designated by the Office of International Affairs), as a commissioner to collect evidence and to take such other action as is necessary to execute this and any subsequent, supplemental requests for assistance with the above-captioned criminal matter from Peru. In support of this application, the United States asserts:

RELEVANT FACTS

1. The Central Authority of Peru, Ministerio Publico's Office, submitted a request for assistance (the Request) to the United States, pursuant to the Inter-American Convention on Mutual Assistance in Criminal Matters, Aug. 27, 1992 – Feb. 28, 2006, S. Treaty Doc. No. 105-25 (the Treaty).

*2.* As stated in the Request, the First Team of the First Corporate Supra-District Attorney's Office Specialized in Organized Crime (Supra-District Attorney's Office), in Peru, is

investigating Dennis Nicholas Melka (Melka), Ruben Antonio Espinoza (Espinoza), Maria Elena Montoya Angulo (Angulo), Alfredo Cesar Rivera Loarte (Loarte), Jose Renzo Puyen Rivera (Rivera), Erick Oscar Mori Cruz (Cruz), Bernardo Evaristo Agurto Rojas (Rojas), Wilfredo Caballero Carrasco (Carrasco), Julian Asuncion Agurto Rojas (Agurto Rojas) Fredy Stiwar Noteluz Paima (Paima), Harry Canayo Amasifuen (Canayo Amasifuen), Victor Raul Lanci Amasifuen (Lanci Amasifuen), Ronald Jean Perez Cruz (Perez Cruz), Reynaldo Benito Rengifo Rengifo (Rengifo), Willian Canayo Cachique (Cachique), Lidia Canayo Cachique (Canayo Cachique), Manuel Alberto Ramirez Inuma (Inuma), Huiley Isuiza Macedo (Macedo), Jose Luis Rengifo Ramirez (Rengifo Ramirez), Juan Amasifuen Ynuma (Ynuma), Dialeny Rivera Munoz (Munoz), Isaac Huaman Perez (Huaman Perez), Daniel Ruiz Vasquez (Vasquez), Jose Daniel Crespin Sampertegui (Sampertegui), Carlos Alvarado Isminio (Isminio), Alfredo Ortiz Gutierres (Gutierres), Eslander Yahuarcani Murayari (Murayari), and other persons. In addition to these persons, the Supra-District Attorney's Office is investigating Empresa Plantacoines de Pucallpa S.A.C (Plantaciones de Pucallpa) and Ocho Sur P S.A.C., entities in Peru, and United Oils Limited, a Cayman Islands entity, and Peruvian Palm Holding, (collectively, the suspects) for crimes against forests or forest formations, which occurred between in or about 2012 through 2016, in violation of the criminal law of Peru, specifically, Section 310 of the Peruvian Criminal Code. Under the Treaty, the United States is obligated to assist in response to the Request.

3.       According to Peruvian authorities, between 2012 and 2016, Melka, along with the other suspects, allegedly created an illegal structure of businesses in the United States and Peru to excavate land and produce palm oil in the Peruvian Amazon with the goal of earning profits from palm oil production. To facilitate the large-scale agro-industrial exploitation scheme, the suspects organized businesses in Peru, secured loan funds from a U.S. entity, and cleared areas in

the Peruvian Amazon for the production of palm oil, causing extensive damage to the Peruvian ecosystem.

4. Melka, having previously been engaged in agro-industrial activity in Malaysia and Singapore, arrived in Peru with the purpose of recruiting investors to organize businesses and facilitate the cultivation of oil palm in Peru.  In 2010, Melka contacted the Benistes, Forno, and Ugaz law firm to form the creation of nine companies, including Plantaciones de Pucallpa and Plantaciones Ucayali, Peruvian entities.  Plantaciones de Pucallpa's corporate purposes were: (1) sowing, extraction, processing, elaboration sale, import, storage, export, transport, representation, marketing, and distribution of the palm tree and (2) the purchase and sale of land for the development of the palm oil industry and related products.  To fulfill these corporate purposes, extensive acquisitions of land had to be obtained in the Peruvian Amazon.  Suspect Loarte contacted Peruvian officials at the Regional Directorate of Agriculture of Ucayali to allegedly arrange for illegal issuance of titles in the names of individuals to facilitate the land acquisitions without recognizing that primary forests and ancestral lands in Ucayali were in the possession of native communities.

5. Plantaciones de Pucallpa was incorporated in Peru on November 17, 2010. Plantaciones de Pucallpa, along with Empresa Plantaciones de Ucayali, are owned by United Oils Limited (or United Oils Limited SECZ), an entity incorporated in the Cayman Islands. After the creation of Plantaciones de Pucallpa, Peruvian authorities allege that it became the entity through which the suspects expanded their agro-industrial capacity by obtaining Peruvian state-owned land for clearing without proper administrative environmental authorization from the Peruvian government.  The large-scale acquisition of land was needed for the planting of oil palm.  According to Peruvian public records in Ucayali, Plantaciones de Pucallpa acquired 4,533

hectares (HAS) (approximately 11,196 acres) in 2012.   According to the Peruvian Ministry of Agriculture, Plantaciones de Pucallpa engaged in the unauthorized clearcutting of the following areas of land in Ucayali: (1) on June 16, 2013, 4,976 HAS (approximately 12,310 acres) (2) on August 19, 2013, 5,707 HAS (approximately 14,096 acres); and (3) on November 7, 2013, 6,035 HAS (approximately14,906 acres).

6. Having acquired large extensions of land and engaged in aggressive clearcutting for the purpose of planting oil palm, the suspects required liquid funds to finance the operations. Simultaneously with the acquisitions of land, in July 2014, Anholt Services, Inc. (Anholt Services), an entity domiciled in Westport, CT in the United States, granted an installment loan for an amount up to 23 million USD, through Southern Harvest Partners, S.A., to United Oils Limited, the parent company of Plantaciones de Pucallpa.  Plantaciones de Pucallpa granted a guarantee on personal property in the entirety of its real property in support of the liabilities assumed by United Oils Limited.

7. In 2015, Plantaciones de Pucallpa granted a pledge contract on all its personal property, approved by United Oils Limited, in favor of SH UOL Administrative Agent LTD. (SUAA, LTD.), to secure its liabilities in the issuance of bond notes up to 48 million USD.  East Pacific Capital Private Limited (East Pacific Capital) purchased the bond notes.  The bond issue agreement, executed through the Bank of New York Mellon in the United States, was dated July 23, 2014.  As a condition of the pledge contract, Plantaciones de Pucallpa agreed not to encumber, affect, transfer, assign, dispose, sell, and, in general, subscribe to any act of disposal regarding all or part of the personal property that is part of the guarantee that could affect SUAA, LTD.

8. Upon further investigation, Peruvian authorities, learned that Melka is the director and sole shareholder of United Oils Limited.

9. On May 29, 2015, a Kahibo Kakataibo (an indigenous people residing in Peru) leader filed a complaint regarding the deforestation and clearcutting of the Tibecocha Sector, located in the district of Nueva Requena in Ucayali, Peru. Subsequently, the Peruvian Ministry of Agriculture engaged in a special environmental supervision of Plantaciones de Pucallpa's clearcutting activity, and on September 2, 2015, ordered that Plantaciones de Pucallpa cease its deforestation and clearcutting activities.

10. As a result of the aforementioned administrative order and complaint as well as other complaints, Peruvian authorities opened criminal and administrative investigations into Plantaciones de Pucallpa's unauthorized land acquisition and clearcutting activities. These investigations affected the liquidity status of United Oils Limited and its subsidiary, Plantaciones de Pucallpa. Subsequently, SUAA, LTD. on behalf of East Pacific Capital, the purchaser of the bond notes, issued a default notice to Melka as the director and sole shareholder of United Oils Limited. Peruvian authorities are investigating Anholt Services's connection to this alleged agro-industrial exploitation scheme because it provided the loan funds to United Oils Limited.

11. To further the investigation by confirming the identity of individuals and entities involved and identifying additional individuals that may be involved in the alleged ago-industrial exploitation scheme as well as confirm the business and financial relationship between the aforementioned U.S. and foreign entities, Peruvian authorities have asked U.S. authorities to: (1) provide bank account records from the Bank of New York Mellon pertaining to the aforementioned bond issue agreement dated July 23, 2014.

LEGAL BACKGROUND

12. A treaty[1] constitutes the law of the land. U.S. Const. art. VI, cl. 2. The provisions of a treaty have equal footing with acts of Congress and are binding on the courts. See Asakura v. City of Seattle, 265 U.S. 332, 341 (1924); United States v. The Peggy, 5 U.S. 103 (1801); United States v. Emuegbunam, 268 F.3d 377, 389 (6th Cir. 2001). The provisions of a treaty should be construed liberally "to give effect to the purpose which animates it." United States v. Stuart, 489 U.S. 353 (386) (1989) (internal quotations marks omitted). To the extent that the provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes the statute. Zschernig v. Miller, 389 U.S. 429, 440-41 (1968). A multilateral convention is a treaty under U.S. law.

13. When executing a treaty or non-treaty request for assistance from a foreign authority, an attorney for the government may file an application to obtain any requisite court orders under 18 U.S.C. § 3512. This section authorizes a federal court to issue such orders and provides in pertinent part:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.
>
> * * *
>
> [A]n application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia.
>
> * * *

[1] The term "Treaty" used herein encompasses bilateral treaties, multilateral conventions, instruments, and protocols.

> The term “foreign authority” means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

18 U.S.C. § 3512(a)(1), (c)(3), (h)(2).

14. Congress enacted this section to make it “easier for the United States to respond to [foreign] requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme.” 155 Cong. Rec. 6,810 (2009) (statement of Sen. Whitehouse); Foreign Evidence Request Efficiency Act of 2009, Pub. L. No. 111-79, 123 Stat. 2086.[2] This section provides clear authority for the federal courts, upon application duly authorized by an appropriate official of the Department of Justice, to issue orders that are necessary to execute a foreign request.

15. An application is duly authorized by an appropriate official of the Department of Justice when the Office of International Affairs[3] has reviewed and authorized the request, and executes the request itself or delegates execution to another attorney for the government.[4] Upon

---

[2] Prior to the enactment of 18 U.S.C. § 3512, the United States routinely utilized the procedures authorized by 28 U.S.C. § 1782 (the “commissioner” process) to execute requests from foreign authorities. See In re Request from the United Kingdom, 685 F.3d 1, 11 (1st Cir. 2012) (18 U.S.C. § 3512 provides a more streamlined process than 28 U.S.C. § 1782, the statute under which foreign requests were executed prior to enactment of section 3512); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-49 (2004) (describing history of Section 1782). When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would ensure reciprocity in response to U.S. requests for assistance in its criminal investigations. See, e.g., 155 Cong. Rec. 10,093 (2009) (statement of Rep. Schiff).

[3] The Attorney General, through regulations and Department of Justice directives, delegated to the Office of International Affairs the authority to serve as the “Central Authority” under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters. *See* 28 C.F.R. 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

[4] “Section 3512 can be invoked only when authorized by OIA. . . . Such authorization occurs when an attorney for the government, or his or her office, receives the referral of the request for execution from OIA.” Memorandum from the Deputy Attorney General to Department of Justice Components (May 16,

such a duly authorized application, Section 3512 authorizes a federal judge[5] to issue "such orders as may be necessary to execute [the] request," including: (1) search warrants under Fed. R. Crim. P. 41; (2) orders for electronic records under 18 U.S.C. § 2703; (3) orders for pen registers or trap and trace devices under 18 U.S.C. § 3123; and (4) orders appointing a person to direct the taking of testimony or statements and/or the production of documents or other things. *See* 18 U.S.C. § 3512(a)(1)--(b)(1). In addition, a federal judge may order any necessary procedures to facilitate the execution of the request, including any procedures requested by the foreign authority to facilitate its use of the evidence. 18 U.S.C. § 3512(a)(1).

16. Section 3512 also authorizes any person appointed to direct the taking of testimony or statements and/or the production of documents. The appointed person has authority to: (1) issue an order requiring a person to appear and/or produce documents or other things; (2) administer any necessary oaths; and (3) take testimony or statements and receive documents or other things. 18 U.S.C. § 3512(b)(2). In ordering a person to appear and/or produce documents or other things, the person appointed, commonly referred to as the "commissioner," typically uses a subpoena entitled "Commissioner's Subpoena." Any such subpoena may be served or executed anywhere in the United States. 18 U.S.C. § 3512(f).

REQUEST FOR ORDER

17. The Office of International Affairs has reviewed and authorized the Request and is executing the Request itself. Consequently, this application for an Order appointing the undersigned attorney as a commissioner to collect evidence and to take such other action as is necessary to execute the Request has been "duly authorized" within the meaning of Section

---

2011) (on file with the Office of International Affairs).

[5] The term "federal judge" includes a magistrate judge. See 18 U.S.C. § 3512(h)(1); Fed. R. Crim. P. 1(b)(3)(B) (including a magistrate judge in the definition of federal judge).

3512. In addition, the Request was submitted by an appropriate "foreign authority," the Ministerio Publico's Office, the designated Central Authority in Peru, and seeks assistance in the investigation of crimes against forests or forest formations –criminal offenses in Peru. The requested Order is necessary to execute the Request, and the assistance requested, i.e., the production of official and bank records, falls squarely within that contemplated by Section 3512 and the Treaty. Finally, this application was properly filed in the District of Columbia.

18. This application is being made *ex parte*, consistent with U.S. practice in its domestic criminal matters.

19. When executing a foreign request for assistance in a criminal matter, Section 3512 authorizes the use of compulsory process comparable to that used in domestic criminal investigations and/or prosecutions. Because subpoenas utilized in U.S. criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to any person other than the recipient (i.e., no notice to targets or defendants), orders and commissioner subpoenas issued in execution of a foreign request pursuant to Section 3512 likewise should require no notice other than to the recipients. This is true even if the Requesting State, as here, seeks financial records, because the Right to Financial Privacy Act, 12 U.S.C. §§ 3401 et seq., including its notice provisions, does not apply to the execution of foreign requests for legal assistance. Young v. U.S. Dept. of Justice, 882 F.2d 633, 639 (2d Cir. 1989), cert. denied, 493 U.S. 1072 (1990); In re Letters of Request from the Supreme Court of Hong Kong, 821 F. Supp. 204, 211 (S.D.N.Y. 1993); In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 407 (S.D. Fla. 1987). Accordingly, this Court should authorize a commissioner to collect the evidence requested without notice to any person(s) or entity(ies) other than the recipient(s) of any given commissioner subpoena.

20. Therefore, the United States respectfully requests that this Court issue the attached Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Angela S. George, Trial Attorney, Office of International Affairs (or a substitute or successor subsequently designated by the Office of International Affairs) as a commissioner, authorizing the undersigned to take the actions necessary, including the issuance of commissioner's subpoenas, as needed, to collect the evidence necessary to execute any pending request for assistance and any subsequent, supplemental requests in connection with the same matter, in a manner consistent with the intended use of the evidence.

Respectfully submitted,

VAUGHN A. ARY
DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS
OK Bar Number 12199

By: Angela S. George
Angela S. George, Trial Attorney
D.C. Bar Number 470567
Office of International Affairs
Criminal Division, Department of Justice
1301 New York Avenue, N.W.
Washington, D.C. 20530
(202) 514-4653
Angela.George@usdoj.gov

Case 1:23-ml-01075-RBC   Document 1   Filed 06/14/23   Page 11 of 11